We'll take the matter under submission. The next case on the calendar is Cook v. Bayle. May it please the Court. Good morning. My name is Bruce Bryan. I'm here on behalf of Yancey Cook. This case raises a significant issue dealing with whether the Confrontation Clause of the United States Constitution was violated when the Court permitted the introduction of records prepared by a New York State Crime Laboratory analyst containing statements in there regarding proper performance, calibration, repair of the device and that it was accurate and reliable. These words are in affidavit form. The first thing I would like to address is that the Attorney General has raised in response and relying on the Supreme Court case of Williams and I think it's quickly disposed of and that is by citing to this Court its decision in United States v. James. Williams, we have here a history since Crawford and it's Melendez-Diaz, Bull Cumming, Bryant, Davis. There's a strong history of establishing what is the clear federal rule. I don't know how you can say there's a clear federal rule. The issue you raise I think is a fascinating issue and if this were here on direct review, the question of whether these records are testimonial would be I think a very, you'd have a powerful argument. It would be a difficult thing for the Court to decide because there are lots of contradictory strands in the Supreme Court authority. There is very little in the way of clear majority guidance on it. To get very specific, what I'm talking about of course is EDPA deference. The question for us is not whether we think this is testimonial. It's whether the New York Court of Appeals made an unreasonable application of Supreme Court precedents. Let me ask you specifically about footnote one in Melendez-Diaz. It says, documents prepared in the regular course of equipment maintenance may well qualify as non-testimonial records. Now if this were here on direct review, we could say, oh, they just say it may well. They don't decide that issue. Maybe it does. Maybe this is really a kind of bogus footnote trying to defuse the dissent, but the logic of Melendez-Diaz clearly applies to what you're saying. But how can we say that the New York Court of Appeals unreasonably applied Supreme Court precedent when it ruled on a question that the Supreme Court specifically leaves open? I submit it did not. And the reason it did not is, and what is the clearly established federal law? What I submit is the establishment of two rules of law or principles. One is a corollary to the other. And it's repeated through several cases, and that is that a record is testimonial if its primary purpose is to create a document for later use in a trial. Now I am practically verbatim repeating what this Court said in United States v. James. I didn't cite it in the brief, but I would like to give the cite to it because I think it's extremely important. 712F3rd79. Now why that's so important, two aspects of it. The Attorney General relies on Williams, and this Court said Williams is limited to its facts. It has no precedential value. The reason is the plurality was the dissent in Williams. So it's only four justices that has this more limited. If there was going to be a situation of making unclear what was clear by the preceding justice. I didn't refer to Williams. I didn't say the word Williams in my question. I'm asking you about a footnote in Melendez-Diaz. What is there? There's not a subsequent Supreme Court case that addresses documents prepared in the regular course of equipment maintenance. There is, and this is why it is not left open. Now if we were to say that the Supreme Court adopted the categorical approach in which you would say, as a category, maintenance records may well be. Well, that's a categorical approach, and therefore it is a question left open. The Supreme Court rejected the categorical approach. The Supreme Court laid down principles applying to all records including maintenance records. It was a comment. It wasn't leaving it open. It was a comment as, well, it may well be saying most maintenance records are made as internal record keeping of an agency. So then is it a factual determination essentially why this particular record was made? No, it is an application, and in this case it is an application of a clearly established federal law. The principle, that test, that test applies to all records including maintenance records, and that's been clearly established. The second corollary to that clearly established rule, federal rule of law, is that you determine whether or the main indicator of whether something is, what its primary purpose is, are the formalities of the document. So that's the rule. What's unreasonable about the state court's conclusion here, correct me if I'm misunderstanding the record, but that the primary purpose of the records here was to document the effects, the efforts of the state police to maintain their equipment in working order? Well, for example, Melendez-Diaz and in Bull Cumming, they said there are certain, they said three factors, they're both here. I won't call them factors. Three indicia of this corollary of formalism. One was creation of the document by a New York State crime laboratory charged with the duty of assisting in the prosecution of crimes. We have that here. Second thing is that we have certification or attestation, and we have that here. We have affidavit language in these documents where here it says, I, Stephen D. Berry, do hereby say that the aforementioned determination, I've got to see what the words are exactly, determined that it's been calibrated, that I have followed procedures. This is right out of Bull Cumming. And then based on the determination, based on the calibration, I have determined that this breathalyzer device is accurate and reliable for the determination of blood alcohol by breath analysis. I submit to you, by the way, that is an incredibly important statement, beyond a maintenance record, beyond it. I could take that and write it on a piece of paper and submit it to a jury. I, Stephen Berry, say this to you. This is an accurate and reliable device. Picture just that statement alone going to the jury. That is clear testimony that is subject to cross-examination. Why? Because we know there's so much in this that they are not accurate. There is such an absolute, the authoritative literature saying it is not accurate, that is a misnomer at best. At best, it's an estimate. And at worst, they are unreliable, depending on the sets of circumstances, and we have it here in this case. So making sure I understand your argument, so your principal argument is that this was an unreasonable application of the primary purpose test. Well, yes. I would say if we just... Do you have to get around evidence? Yes. Well, I would say that this is as close to Bull Cumming as you can get. I mean, Bull Cumming was a blood test for a DWI case. There's a big difference, isn't there, between, you know, the next step. Now, I realize this is different, right, because in your case, it is the breathalyzer that is testifying, in effect. It's the machine that's testifying, and behind that is this guy saying the machine works. But, of course, if you had the live chemist who testifies, as in Bull Cumming, I did this test, I used a machine to do this test. Oh, well, was the machine working? Yeah, I think so. Actually, we have records of a technician who came in and maintenanced the spectrometer. Do we now need to have that technician come and testify? The same argument was made in Bull Cumming and rejected. And let me just give you... I think it's the same argument that the dissenters made in Melendez-Diaz, and that's why that footnote was put in, to say, wait, we're not necessarily going that far. Well, again, what I would say is, and if there's clarification to it, if that footnote raises, first of all, it's consistent, I would say, through the cases, that the Supreme Court has rejected the categorical approach. It applies these principles to all records, regardless of what they are. But then you look at Bull Cumming and you look at Bryant, and it confirms that rejection of the categorical approach. Then we move into if there are certain principles to be applied that are essentially factual about what is the purpose of this, then you're confronted with having to have us conclude that the fact determination by the New York courts was wrong about what the principal purpose was. I see with my time, but I want to jump to something quickly to say about the New York Court of Appeals, and here the lower court relied on Peeler as the decision. It was just like we cite Peeler, all right? So why is the New York Court of Appeals also wrong here? I'm saying, you know, if we just take an application, but it is not following federal law. It clearly established federal law. Yes, it gave lip service to the primary purpose test enunciated by the Supreme Court, but then what did it do? It did not follow it. What it did was we have New York precedent. We say it means this. When you look at what they said it means, it is not what Bull Cumming, Melendez-Diaz, Bryant said at all. In fact, what it says, it adopts the dissenting minority view. I'll point to one thing that they say just as an illustration. They say one factor, and these are factors of exclusion. If you don't meet these factors, it's not testimonial, and they're very narrow. So one narrow factor was the document must accuse the defendant directly. Well, that was rejected specifically in Melendez-Diaz by the majority, and this court in James noted that as to the difference. That is not the prevailing majority view. In James, it's not only that this case, Williams, is limited to its facts, but also expressing it is a clearly established federal rule. It explains what Melendez-Diaz, Bull Cumming, Bryant mean as the rule. The high courts, your adversary points out Louisiana, New Hampshire, Pennsylvania, Wyoming, there are a number of state high courts that have come to the conclusion that records of this type, maintenance records, are not testimonial. It's hard in that context for a federal court to say fair-minded jurists could not disagree about the nature of the records, and I'm having a little difficulty understanding whether you're saying there was the legal determination, there's a clearly erroneous legal determination, or that there's something about these specific records that means that there was a factual determination that was incorrect. So just to put in my oar here, I thought what you were arguing is that this is not a maintenance record. Because the record says that based on the calibration, it has been determined that the instrument is accurate and reliable for the determination of ethyl alcohol in the blood by a nouse of breath. That's not a maintenance record in the normal sense of saying, you know, we've determined that the gears all work and it doesn't need oil and stuff like that. It's an assertion that this is a scientifically methodologically sound instrument for determining certain relevant facts. That's exactly what I'm arguing, what I've been trying to argue, is this is, let's call certain aspects of the record that has maintenance elements of it, but superimposed on that record and the purpose it's superimposed on that record is for use in a trial. Are these things that meet, yeah, it's beyond maintenance. Was there a Daubert objection made to that testimony, if testimony it was? It's a violation of the confrontation. But was there an objection that nothing about this machine should be allowed into evidence because no one has established that this is reliable as a scientific matter? I don't recall that objection, but also that objection would not be consistent with Melendez-Diaz and all of the analysis under the confrontation clause because the Crawford made the change from saying we look at reliability to instead whether it's testimonial. Reliability is not the measure here as to what you do to make a determination of whether something is reliable. Well, if they brought in the fellow that you want brought in, your argument basically is he shouldn't be allowed to testify anyway because he can't establish this. Let me give you, as some examples, why cross-examination is so important. And if I may, if you can allow me, I also teach as a professor, and I have gone to China several times to teach, and I can tell you the main thing that I'm being asked about is cross-examination and how to do it. Well, the confrontation clause and the right to cross-examination, they go hand in hand. You're bringing the person into court so then they can be cross-examined. It's the hallmark of our system. Yeah, but before he even gets into court, there's a problem, it seems to me, that the state is relying on some kind of science, and you're saying it's bogus science. Well, you might. I think your point is it would be a tactical choice. You could make a downward objection and try to keep it out altogether, or you might prefer if you thought it would be really damaging to the state's case to let the guy testify and then cross-examine him with all the methodological problems, and then you would have the argument, you see, ladies and gentlemen, the state is relying on this kind of nonsense to prove their case. You shouldn't let them get away with it or something like that. There's evidence in this record that's highly, highly damaging to the people's case that I submit would have created at minimum reasonable doubt but in great likelihood would have led to acquittal. And the reason is that there's an element of the New York crime which says you must prove it is in working order. And here, what happens is there's a calibration and repair that goes on in a time frame. New York chooses at a minimum one year. This was violated here. It was 13 months, but critically, the one that occurred later, within weeks of when this Mr. Cook was the breathalyzer was done, that report, the analyst said, I replaced the fuel cell and the capillary tube to this device. Well, especially that fuel cell is critically important because in these devices, all the authoritative literature is saying is as that degrades, it degrades to a point, the fuel cell component of it, the device becomes unreliable. It is the standard reference. If that standard reference is not working, the device does not work. So I would say, so critically, great cross-examination there would have been. And, by the way, another thing that is in the record, it says, I can say. The point you're making here, just to make it clear, to make sure I understand it, is that even if we were to accept that he did the maintenance, one of the things he did was after this machine had been used to test the defendant in the case, it had to be fixed. Yeah. And we don't know whether it was in need of a fix at the time that it was tested or not. That's it. The point of the introduction of the record is to prove an element of the crime, that within this time frame between the point of being calibrated and tested at this point and the point where it is tested again and somewhere the defendant falls in that time frame, it is working here, it is working here. Of course, you could never prove that unless it was tested every day and maintained every day. It's not a great way. And that's why the blood test in Bull Cumming has less problems. It's tested at the time. With breathalyzers, huge time frame, all the more reason to cross-examine over it. But we have in here explicit evidence that would have created, I submit, reasonable doubt on cross-examination that this device was not working when Mr. Cook was tested. You wouldn't have someone, frankly, like Mr. Cook. Look how much he's fought this thing if he wasn't adamant that he was not intoxicated. So here we are, and you have a device. And, by the way, another thing so important, just a critical word. I have relatives that I've driven with who are adamant that they're not intoxicated. They would go to their dying day saying they weren't intoxicated. So I'm not sure I agree with that inference. Let me say, though, here's another point of cross-examination, so important. You look at the language. It is affidavit language. If I was drafting an affidavit for someone to sign, I'd write it exactly like this. I so-and-so say that the above reference is true, accurate, et cetera. That's affidavit language. Some of it, I give you some of it, could sound like affidavit language. Exhibit 6, reference gas lot number 917605 has been tested by infrared and electrochemical testing to contain the appropriate concentration of ethyl alcohol and is hereby approved for use. That sounds like maintenance language. Well, here's the really important records are the ones of the, they call them calibration and maintenance. And by the way, they're recognizing, even in the title, that this is more than a maintenance record, calibration. But here's the critical language. I, Stephen D. Barry, calibrated the above-referenced instrument, legal language, and determined that any necessary maintenance procedures were performed. Right out of Bull Cummings, they said, you've got to cross-examine over that whether it was in fact done. Based on this calibration, I've determined that the instrument is, is, keyword is, accurate and reliable for the determination of ethyl alcohol in the blood by analysis of the breath. Now, I want to focus on the word is. You look at the regulations and what calibration means under the regulations and what this means here. It means after they've repaired it and calibrated it, then it is accurate. The trooper was asked in this case, was it working before? He can't say because he's not the analyst. And he says, I don't know. Was there a, there was no record introduced of the calibration, the preceding calibration? No, both there. But you see, the importance of the second calibration is to, is what it's being introduced for is the claim that if it's working now and it's working now, it must have been working in between and that it must have been working at the time. If that record, by saying it is calibrated, not was calibrated, was working, it is of no effect. That is cross-examination material of the strongest kind. That analyst had to be there. It's a logical argument that's available to be made to the jury based on the records that are already there. Well, you apply, well, no. Granted, you don't get the drama of the cross-examination, but analytically the argument is the same whether the guy shows up or doesn't show up. The problem is there was cross-examination. The trooper is saying, I don't know. And then he's asked, well, what does it mean? And he says, it means it's working between in here and there, and therefore it's working. That's the problem. You needed to cross-examine the analyst. And by the way, one last thing I just want to point out for just absolute proof. Wouldn't he say the same thing the trooper said? I mean, the point is what the trooper said is wrong, and you can make that argument to the jury. You can't. You have nothing to say the trooper's wrong. You have nothing. You only have in the record the I don't know. You don't have it. You have to cross-examine the analyst. Now, I just want to make one last point to just show you that this record, these records were intended to be introduced in trial, and I think absolute proof of it. Last point, then I'm going to start getting into your rebuttal. I'm sorry. And it is. In the end language here, I, Stephen D. Barry, made the entries contained in this record at the time of each event recorded or at a reasonable time thereafter. That's the business record exception. That is this record was meant to be introduced in trial. Intended. It satisfies Paul Cumming and Melendez-Diaz. Thank you. May it please the court. There were a lot of points there, and I want to. I just want to focus on one, and this is in People's Exhibit 5, which certified, as I read it before, quote, based on the calibration, it has been determined that the instrument is accurate and reliable for the determination of ethyl alcohol in the blood by analysis of breath. I don't see how that is a maintenance record in any way, shape, or form. It's the functional equivalent of a Rule 702, if it were the federal rules, an expert opinion directed specifically to the reliability of this evidence in this case. How can you say it's a maintenance record? Your Honor, notwithstanding any similarity between the language of that document and the federal rules of evidence, I think it precisely is a document stating essentially that the device that's being tested works and is fit for the purpose for which it was designed. I'm looking at the language. The instrument is accurate and reliable for the determination of ethyl alcohol in the blood. And that's the purpose of the device, Your Honor, is to measure ethyl alcohol in the blood. And, Your Honor, I don't have to come up with this on my own. I think that the counter to the argument that you're making was stated well by, so essentially way back in 2005, right after Crawford was decided, there was one judge in an upstate New York town court who started dismissing these 1192 prosecutions based on the fact that these documents he held were testimonial under Crawford. The district attorney of Monroe County brought collateral action, an Article 78 proceeding in the county court, the Monroe County Court, saying essentially to the county court judge, you have to stop this. And that's precisely what the county court did. And in doing so, in holding that these maintenance documents were not testimonial, he went on at length. So I could give Your Honor the site, but I would just like to read a little bit of the language because I think it answers your point perfectly. The site is Green Deep v. DeMarco, 11 Miss, MISC, 3rd, 451. And this is out of the Supreme Court. Was this cited in your brief? No, Your Honor. It came up after as we were preparing for oral argument. And I just provided a copy to opposing counsel. I wasn't sure this point was going to come up. When did you provide it to opposing counsel? Excuse me, Your Honor? When did you provide it? Just now, Your Honor. Isn't that a little late? Well, Your Honor, I wasn't sure the point was going to come up. Now that it has come up, I feel compelled to cite it. It's not binding on this court. It's merely persuasive. And we offer it merely for its persuasive effect. But he basically analogizes these documents to the regulatory requirement of having your car licensed,  and he's doing this in the context of the primary purpose being a regulatory purpose, which is precisely the argument we make in our brief. And he essentially says that the records of these inspections are akin to periodic state-mandated safety inspections on motor vehicles, just as auto mechanics must determine periodically whether cars meet state-imposed safety criteria, technicians must determine periodically whether breath-testing instruments meet state-imposed accuracy criteria. So what Your Honor is looking at as evidentiary language, well, everybody in this room are lawyers, and as they always say, if you're a hammer, everything looks like a nail. I don't understand how the analogy works. The whole question here is whether these instruments do, in fact, accurately measure. Everyone knows that cars, as a general matter, work, but this is not like a car. This is an instrument whose reliability has been seriously questioned. So I don't understand the analogy. It's like it would be I hereby certify that this car that runs on paper pulp runs well. No one could ever accept that. It would have to be the subject of expert testimony in court. And why isn't that the kind of situation we're faced with here? Your Honor, a few points about that. Respectfully, I disagree about the science. There's plenty of case law upholding the accuracy and reliability and admissibility of these breathalyzer test results. But even before you get there, I think we have to note that we are here on federal habeas and that the defendant was free to raise all these points below, and he never did so. It's not in the record. It shouldn't be considered by this court. Going back to Exhibit 5, because I, with my colleague, look at this language and it looks sort of like an affidavit, the state courts looked at it and they determined that its primary purpose was not for introduction at trial. And this is a separate question from the reliability and the science. We're just talking about whether it's testimonial or not. So they concluded that its primary purpose was not for introduction at trial but for something else. That's a determination they're supposed to make based on the totality of the circumstances, not just the language here. So can you marshal the evidence on which the state court relied to make this determination? Certainly, Your Honor. And I think it's a good point because it also answers the defendant's repeated argument that these records are similar to the records in Bull Cumming and Melendez-Diaz. These maintenance records are prepared pursuant to a statute requiring that they be maintained in good working order. Another point made in the Green case that I just cited is also that they are just as likely to exonerate a suspect, not requiring a trial as they are to inculpate a defendant. The regulatory purpose shows that there's a primary business purpose for these documents. They have to be, you know, as the officer here testified when he was being voir dired by defense counsel, he has seen these records in the context of him carrying them back to some central depot to be worked on, similar to a car going into a mechanic to be certified pursuant to its annual inspection. So I think Your Honor is right that the primary purpose of these documents is business. And, again, the point I was trying to get at before is— Isn't the problem that this is really an incoherent distinction? Here you have a machine. In the ordinary workings of any kind of machine, it has to be maintained. If you want to make sure that you have reliable machines, you keep a record of whether there's maintenance. So that's being done. The problem is then you get a lawyer involved. And the lawyer comes and says, well, what should this form look like? We want to put in a bunch of stuff into this to make sure. And especially because there's actually a statute. It's the same statute, but there's two requirements. One is a requirement imposed on the state police that they make sure these machines work. But the other is that it has to be proven in court that the machine worked and was properly maintained. So now your proper maintenance record is automatically going to overlap with a record that everybody knows is going to be used in court. So the regular—and of course it gets fancy. And it seems to me a little odd to think that if some technician jotted down some notes on a piece of paper, showed up on such and such a day, checked out machine, it works, it's a great machine, initialed, that could come in. But because some lawyer designed a form that looks a little more like a formal certification, then it can't come in. It's all kind of nonsensical as a standard, and that's the problem you've got. It's both. It's a maintenance record, and it's a maintenance record that everybody knows is one day going to show up in court every time that machine is used and gets a positive result. Isn't that not true? Absolutely, Your Honor. And as the Supreme Court has made clear, just because there's an incidental purpose for litigation, that doesn't affect the primary purpose. I don't know what's incidental or primary in that world. It is both is the problem. Yes, Your Honor, and we would argue here, initially, as the Court recognized, which is why I haven't dealt with it too much, that the Supreme Court has explicitly carved these types of records out of its holdings. If it's not in the holdings, the Supreme Court has made clear, there can't be a basis for habeas relief. A couple of other points I just wanted to make. First of all, even if we ignore AEDBA, which we should not do, but even if we ignore it, the admission of these records was harmless error as to two of the three counts of conviction. The defendant was convicted of common law driving while intoxicated, which doesn't require the admission, the proof of any specific breathalyzer result. And the aggravated form of that crime, the Leandris Law, 1192-2A, sub B, has the common law DWI as a predicate. So even if we weren't looking at AEDBA, even if we were looking at this de novo, we would argue— Because that's based on the trooper's observations? The trooper's observations. And the defendant's own admissions, which he corroborated during his testimony at trial, that he had been drinking on the afternoon that he was arrested. But how can it be harmless if you've got what is a somewhat— it's always a disputable question what the trooper observed. He admits he'd been drinking, but he said he didn't drink that much and he wasn't intoxicated. And now you come with a scientific instrument that says his blood alcohol was at a level that automatically makes it intoxicated for purpose of this other statute. How can the jury separate that and say, oh, but that doesn't count? I can put that entirely to one side and assess this solely on the basis of these other rather disputed facts. And, Your Honor, I might agree with you if it was solely Trooper Mannion's account, but he had the corroborating testimony of another trooper who showed up at the arrest. And most importantly, he had the defendant's admissions that he had been drinking that afternoon, in which the defendant then corroborated at trial by admitting that he had had two vodka cocktails and a beer that afternoon. In the light of that overwhelming evidence that he was intoxicated or impaired that afternoon, the evidence of the breathalyzer was not necessary and would be a harmless error. But coming back to the actual standard of review here, because the Supreme Court— Maybe it wasn't necessary, but you're saying we could conclude beyond a reasonable doubt that the jury would have convicted without the breathalyzer testimony on the common law charge? Yes, Your Honor, as well as the aggravated driving while intoxicated charge, in light of the fact that virtually every witness that appeared at this trial, both for the defense and the prosecution, testified. It was undisputed that the defendant had been drinking that afternoon and that he had consumed three alcoholic beverages. But, again, and the one other point about the distinction between— I just wanted to get one more point—the distinction between maintenance records and the records at issue in Melendez-Diaz and Bullcoming. Even before Crawford came out, this Court had recognized that the crux of the confrontation clause was accusatory statements. Specifically, in the case of Ryan v. Miller, it was a habeas case in 2002. This Court stated that the confrontation clause is concerned with statements that target only that testimony that contains accusations against the defendant. The Supreme Court has recognized that in its post-Crawford jurisprudence, and if you look at the statements that it has found to be testimonial, they were all statements that accuse a specific targeted defendant of criminal activity. I thought in Williams—correct me if I'm misremembering, but I think that if you add the dissenters and Justice Thomas together in Williams, you have five justices who specifically reject that theory as a basis for making confrontation clause determinations. I think they reject that as the specific test that you should use to determine, but as a factor to consider in what is testimonial. I don't think the Court has gotten there yet. And because they haven't gotten there, the state court correctly ruled that habeas relief wasn't available here, and I urge this Court to affirm the district court. Thank you. Speaking to Judge Rakoff and supporting that this is a document more than a maintenance record and that language about clear and accurate, it is expression of— and you would take that witness aside, but forget about the rest of the maintenance document. That is a separate—that is the ultimate fact on the critical disputed issue in this case. There was no other disputed issue. Was it working or is it accurate and reliable? And I'm just going to enumerate a few to see just how disputed that assertion is, the word accurate and reliable. This is conceded by both sides. Was there a specific objection to a sort of fallback argument by the defense that the accurate and reliable piece at least should be excised as not being a maintenance record? There was— Or was there an objection to the whole document? Yeah, confrontation clause on the basis that the document, the witness, the analyst, should have been there to be cross-examined, and here, for example— Right, but the objection—I'm asking you, was the objection to the entire document— I take it there was an objection to the entire document that was overruled. Was there then a specific objection to the language that Judge Rakoff referred to that at least that is not a maintenance record? Well, I don't have a specific recollection right now. I would submit that the objections that were made, and it was a lengthy objection, expressing why this was a violation of the confrontation clause and attempts at cross-examination on multiple fronts here, shot down, shot down, because you had the trooper, you didn't have the analyst on the stand. So I submit any objection or the whole proceeding was clearly, clearly preserved here. But let me just say, you can imagine a cross-examination on that statement of that this is accurate and reliable. It has an undisputed 10 percent margin of error. Right, but the question is, is it a maintenance record or not? It's not a question of is it reliable. The question is, is it a maintenance record or is it something else? Or at least that's a question, and that's the question I'm focusing on here. It is a record that says things, and in it contains statements that are more than mere maintenance. So the objection was made to the entire record on multiple grounds. So also here, just as illustrations, picture this as cross-examination, as expired breath. That machine is based on the assumption that it has a 36-degree centigrade expired breath temperature. We know that the study on which it is based was false 1950s. It is not reliable. It's an expired breath temperature of 39.9. Probably about a 10 percent error already built into the machine reading high. The fuel cell degrades. When that degrades to a certain point, it can't measure properly. We had here. You received the records. The state law requires that you receive the instrumentation records for the trial, right? I believe under state law it's to get this. You get the discovery. Yes. So you know who inspects. It's good. From the defense perspective, I would imagine that the name of the person, I, Mr. Jones, is the one who tested this piece of equipment because then you know who the tester is, and you can use your subpoena power to bring them to trial if you want. There may be, and correct me if I'm misunderstanding, there may be grievous reliability concerns with these instruments, but that's not the issue before us. We're focusing on whether it's testimonial or not. I'm sorry, Justice. And I'm reassuring myself that those reliability concerns, at least the defense would have the requisite information in the course of testing the state's evidence to do its own investigation because this is not directed right at this point, the argument you're making, at reliability, but at whether the state court unreasonably determined that these documents were not testimonial. We cannot say to bail out the state here that the defense can then subpoena witnesses because then that reverses the burden of proof. It violates the right to self-incrimination. There are multiple reasons why you can't do that. What I'm just saying is to reassure myself that the defense, at least in discovery, is apprised of information about the use of these instruments. You can't also rely, I submit, on the state court determination here and say, let's look at what facts if it's applied the wrong legal standard. We submit that they did. It does not. It is in conflict with Melendez-Diaz. And so whatever result is, you say factually, we don't know because the standard we submit is wrong. That's for your argument? Yes. Last, can I just, one last thing. We just assumed that this is the maintenance record. Maintenance records on these things are, it's huge reams on computers. This is only a single document. This is a formalized document created. It's on the state computers. It's called COBRA data. That's the maintenance records. That's the stuff that's not submitted into court. It would probably be stacked this high on that birthalyzer. This is a document prepared specifically to support a prosecution of a defendant, Mr. Cook. Thank you. Thank you both. Very well argued.